UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PARKSIDE CAPITAL LTD., Individually and On Behalf of All Others Similarly Situated, ) ) ) | No. 06-10991-RWZ |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION |
| XERIUM TECHNOLOGIES INC., et al., ) ) | FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF |
| Defendants. ) ) ) ) | ALLOCATION OF SETTLEMENT PROCEEDS; AND CERTIFYING SETTLEMENT CLASS |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ..................................................................................1

II. STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
    SETTLEMENTS..............................................................................................................3

    A.  An Evaluation of Plaintiffs' Likelihood of Ultimate Success on the Merits
        Balanced Against the Amount and Form of Relief Offered in the
        Settlement Supports Approval of the Settlement.......................................................5

    B.  Consideration of the Complexity, Expense, and Likely Duration of the
        Litigation Supports Approval of the Settlement .......................................................9

    C.  Consideration of the Stage of the Proceedings Supports Approval of the
        Settlement ................................................................................................................10

    D.  In the Judgment of Experienced Trial Counsel the Settlement Is a
        Favorable Result ......................................................................................................11

    E.  The Settlement Is the Result of Arm's-Length Negotiations.................................11

    F.  The Reaction of the Settlement Class Supports the Settlement.............................12

    G.  The Settlement Is in the Public Interest .................................................................13

III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE............14

IV. FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED
    SETTLEMENT IS APPROPRIATE ...........................................................................15

    A.  The Settlement Class Is Sufficiently Numerous ...................................................16

    B.  Common Questions of Law or Fact Exist..............................................................16

    C.  Plaintiffs' Claims Are Typical of Those of the Settlement Class..........................17

    D.  Plaintiffs are Adequate Class Representatives.......................................................18

    E.  The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................................18

        1.  Common Questions of Law and Fact Predominate Over Individual
            Questions.....................................................................................................19

        2.  A Class Action Is Superior to Other Available Methods for
            Resolving This Controversy ........................................................................19

**Page**

V.   CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)............................................................................15, 16, 19

*Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund,*
    902 F.2d 185 (2d Cir. 1990).........................................................................13

*Bano v. Union Carbide Corp.,*
    273 F.3d 120 (2d Cir. 2001).........................................................................13

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ......................................................................17

*Bussie v. Allmerica Fin. Corp.,*
    50 F. Supp. 2d 59 (D. Mass. 1999) ..............................................................4

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    177 F.R.D. 54 (D. Mass. 1997).....................................................................4

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)......................................................................................8

*Galdi Sec. Corp. v. Propp,*
    87 F.R.D. 6 (S.D.N.Y. 1979) ......................................................................12

*Great Neck Capital Appreciation Inv. P'ship, L.P.*
*v. PricewaterhouseCoopers, L.L.P.,*
    212 F.R.D. 400 (E.D. Wis. 2002) ...............................................................15

*Greenspun v. Bogan,*
    492 F.2d 375 (1st Cir. 1974)........................................................................5

*Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.,*
    No. Civ. 99-143-JD, 2004 WL 166722
    (D.N.H. Jan. 23, 2004)................................................................................4

*In re Cabletron Sys., Inc. Sec. Litig.,*
    239 F.R.D. 30 (D.N.H. 2006) .....................................................................13

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) .............................................................13

- iii -

**Page**

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)....................................................................................4, 5

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................................9, 11

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................................................13

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)....................................................................8, 10, 11, 14

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999).................................................................................15, 16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002)..........................................................................................8

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005).......................................................................4, 5, 7, 16

*In re Microstrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ......................................................................14, 15

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    243 F.R.D. 17 (D. Me. 2007)............................................................................................7

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...............................................................................14

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)............................................................................. *passim*

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .....................................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................................................14

*Krangel v. Golden Rule Res., Inc.*,
    194 F.R.D. 501 (E.D. Pa. 2000)......................................................................8, 9, 10, 13

Page

*McLaughlin v. Liberty Mut. Ins. Co.*,
    224 F.R.D. 304 (D. Mass. 2004) ...................................................................................16

*Payne v. Goodyear Tire & Rubber Co.*,
    216 F.R.D. 21 (D. Mass. 2003) .............................................................................16, 17

*Rodrigues v. Members Mortgage Co.*,
    226 F.R.D. 147 (D. Mass. 2005) ...........................................................................17, 18

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ...................................................................................4, 12

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004) ...........................................................................................16

**STATUTES, RULES AND REGULATIONS**

Securities Act of 1933
    §11 ...................................................................................................................................5

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................14, 15, 16, 19
    Rule 23(a) ..................................................................................................2, 16, 18, 20
    Rule 23(a)(1) ...............................................................................................................16
    Rule 23(a)(2) ........................................................................................................16, 17
    Rule 23(a)(3) ...............................................................................................................17
    Rule 23(a)(4) ...............................................................................................................18
    Rule 23(b) ............................................................................................................15, 16
    Rule 23(b)(3) ......................................................................................................*passim*
    Rule 23(b)(3)(D) .........................................................................................................19
    Rule 23(e) .................................................................................................................1, 3

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this memorandum of law in support of their motion for final approval of the settlement of this litigation, approval of the plan of allocation of settlement proceeds and final certification of the Settlement Class in *Parkside Capital Ltd. v. Xerium Technologies Inc., et al.* (the "Action").[1]  The terms of the settlement (the "Settlement") are set forth in the Stipulation of Settlement dated November 3, 2008 (the "Stipulation"), which was previously submitted to the Court.  As set forth in the Stipulation, Defendants[2] agreed to pay Three Million Six Hundred Thousand Dollars ($3,600,000) to settle Plaintiffs' claims.  The Settlement Amount has been deposited into an escrow account and is currently earning interest for the Settlement Class.  Plaintiffs believe that the Settlement is an excellent result under the circumstances, is in the best interests of the Settlement Class,[3] and merits the Court's approval.

Plaintiffs have carefully investigated and actively litigated this case since its commencement over two and one-half years ago.[4]  The Settlement was reached after hard-fought efforts by counsel,

---

[1]    The Memorandum of Points and Authorities in Support of Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Expenses, with supporting documents, is being filed herewith.

[2]    Defendants are Xerium Technologies Inc. ("Xerium" or the "Company"), Thomas Gutierrez and Michael O'Donnell.

[3]    The Settlement Class is defined in §IV, herein.  This Court certified the Settlement Class, for settlement purposes, in its Order Preliminarily Approving Settlement and Providing for Notice dated November 14, 2008 ("Preliminary Approval Order").

[4]    The accompanying Declaration of Robert M. Rothman in Support of (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and Expenses ("Rothman Decl.") provides a detailed history of the litigation and the factors bearing on the reasonableness of the Settlement and plan of allocation, and the Court is respectfully referred thereto.

including extensive factual investigation, despite the discovery stay mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") pending resolution of Defendants' motion to dismiss; drafting of a detailed amended complaint; full briefing and oral argument on Defendants' motion to dismiss; document discovery, including subpoenas to Xerium's customers and the production of thousands of pages of non-public documents by Defendants; expert consultation and mediation before a retired federal judge.  *See generally* Rothman Declaration.

Plaintiffs' and Plaintiffs' Counsel's conclusion that the Settlement is a very good result under the circumstances, and is in the best interests of the Settlement Class, is based on all the circumstances of this litigation.  Plaintiffs and Defendants (collectively, the "Settling Parties") filed the Stipulation with the Court on November 5, 2008, and Plaintiffs filed an unopposed motion for preliminary approval of the Settlement the same day.  The Court granted Plaintiffs' motion on November 14, 2008.  Moreover, the plan of allocation ("Plan of Allocation") of the Settlement proceeds is fair, reasonable, and adequate, and should be approved.  Settlement Class Members agree with this conclusion, as there have been no objections to the proposed Settlement or the Plan of Allocation.  Finally, the Settlement Class meets all the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3).  Therefore, final certification should be granted.

Pursuant to the Court's Preliminary Approval Order, the Notice of Pendency and Settlement of Class Action (the "Notice") was mailed to 11,125 potential Settlement Class Members.  *See* paragraphs 4-8 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice ("Sylvester Decl."), submitted herewith.  Both the terms of the Settlement and the Plan of Allocation are set forth in detail in the Notice.  In addition, a summary notice (the "Summary Notice") was published in *Investor's Business Daily* on December 12, 2008.  *Id.*, ¶11.  The last day

to opt-out of the Settlement Class or to serve and file objections to the fairness of the Settlement or the Plan of Allocation is February 11, 2009. Although that date has not yet passed, following the extensive Court-approved notice program, not a single Settlement Class Member has filed an objection, and to date only two shareholders, representing 1,000 shares, have requested exclusion from the Settlement Class.[5] The response of the Settlement Class Members, therefore, demonstrates overwhelming support for the Settlement.

## ARGUMENT

**II.    STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**

Rule 23(e) of the Federal Rules of Civil Procedure states in part:

**e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(1)** The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

**(2)** If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

**(3)** The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)** If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**(5)** Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

---

[5]    Should any objections be timely filed, Plaintiffs will address them in a reply brief, which will be filed no later than February 18, 2009.

There is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement. *See In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005)("[T]he First Circuit has not established a formal protocol for assessing the fairness of a settlement."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)("There is no single test in the First Circuit for determining fairness, reasonableness and adequacy of a proposed class action settlement.").  Rather than applying "a single litmus test" in making the fairness determination, the Court should engage in a "studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999).

Courts in this Circuit have considered the following factors in evaluating the fairness of a class action settlement:  1) the potentially significant obstacles to recovery; 2) the complexity and likely duration of the litigation; 3) the stage of the proceedings at which the settlement was reached; 4) the amount of the settlement in light of the risks of litigation; 5) whether the settlement was reached after arm's-length negotiations and the opinion of qualified counsel; and 6) the reaction of the class to the proposed settlement.  *See, e.g.*, *Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. Civ. 99-143-JD, 2004 WL 166722, at *5 (D.N.H. Jan. 23, 2004); *Rolland v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000).

Moreover, "[i]n evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997).  As the First Circuit has observed,

> any settlement is the result of a compromise – each party surrendering something in
> order to prevent unprofitable litigation, and the risks and costs inherent in taking

- 4 -

> litigation to completion.  A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial.

*Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also Compact Disc*, 216 F.R.D. at 211 ("As supervising judge, I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron(R) Mktg.*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered").

Consideration of all these factors supports the conclusion that the Settlement of this Action is fair, adequate and reasonable.

### A.  An Evaluation of Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement Supports Approval of the Settlement

Although Plaintiffs believe they have strong claims and would prevail at trial against Defendants, Plaintiffs face formidable obstacles to recovery in this Action with respect to both liability and damages.  The principal claims asserted in the litigation on behalf of the Settlement Class are based on §11 of the Securities Act of 1933 in connection with the initial public offering of Xerium common stock in May 2005.  In order to prevail on their claims, Plaintiffs must prove that the Registration Statement and Prospectus for that offering contained material misrepresentations or omissions.

Plaintiffs alleged that Xerium's Registration Statement and Prospectus for its May 16, 2005 initial public offering were negligently prepared and, as a result, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Registration Statement and Prospectus allegedly failed to disclose the significant and severe production problems that Xerium was then experiencing at its Starkville, Mississippi

plant, which problems were then negatively impacting the Company's business and forcing it to have its customers seek out other producers. Rothman Decl., ¶13. Plaintiffs alleged that failure to discuss such problems was material because the Starkville plant was Xerium's sole clothing manufacturing facility for the United States market and the inability to timely produce clothing for its customers exposed the Company to lost sales and customers. *Id.* Plaintiffs also alleged that the Registration Statement and Prospectus misleadingly stated that the Company was "well-positioned" to "take advantage" of positive trends in the paper production industry, and that the statement that the Company's Cost Reduction Programs had "rationalized production among our facilities to better enable us to meet customer demands," was materially false and misleading because the production problems being experienced by the Company's Starkville plant were being made worse by the Company's closing of the Company's Farmville plant. *Id.*, ¶15. As a result of Defendants' allegedly material misrepresentations and omissions, Plaintiffs and other Settlement Class Members were damaged when they bought Xerium common stock in the initial public offering.

Throughout this litigation, Defendants have adamantly denied liability and have asserted that they have absolute defenses to Plaintiffs' allegations. Among other things, Defendants claimed that the allegedly materially false and misleading statements such as the fact that the Company was "well-positioned" to "take advantage" of industry trends were inactionable "puffery" and immaterial; that other allegedly misleading statements were "forward-looking" or protected by the "bespeaks caution" doctrine, because they included sufficient cautionary language to protect them from liability; that the "Risk Factors" contained in the Registration Statement and Prospectus were sufficient to alert Xerium stock purchasers of potential problems and uncertainties regarding the closing of certain facilities; and that there was not a general "duty to disclose" certain information. Rothman Decl., ¶¶49-55. Plaintiffs believe that they had meritorious claims and, ultimately, would

have been successful at trial.  But the Defendants' arguments could have been persuasive to this Court at summary judgment or a jury at trial.

This Action also involves a number of complex factual issues, many of which require an understanding of engineering and paper production processes.  Assuming Plaintiffs survived Defendants' anticipated motion for summary judgment, presenting these complex issues to a jury would pose a risk to Plaintiffs' likelihood of success at trial.  These risks demonstrate that the Settlement is reasonable under the circumstances.  *See Lupron(R) Mktg.*, 228 F.R.D. at 97 (approving class action settlement in light of "plaintiffs' principal risks" with respect to establishing liability, including the "formidable, albeit not insurmountable obstacles in presenting to a lay jury a clear, and yet legally sufficient, narrative of the evidence").

Plaintiffs would have to steer the jury through a maze of financial statements, engineering documents and internal memoranda, and documents regarding their allegations.  Whether a jury would understand the intricacies of these issues well enough to reach a determination in Plaintiffs' favor, especially when faced with conflicting testimony and evidence, is far from certain.  It is well-established that "[c]lass actions often present extraordinarily complex factual and legal scenarios." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 243 F.R.D. 17, 18 (D. Me. 2007); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (Securities class actions are often "difficult and . . . uncertain.").

Moreover, there are many risks inherent in all shareholder litigation, including: the unpredictability of a lengthy and complex jury trial – raising a myriad of complex issues; the risk that witnesses could suddenly become unavailable and the risk that jurors could react to the evidence in unforeseen ways.  Indeed, this was not a case involving significant insider trading, criminal

indictments, or the resignation of its auditors because of the Company's misconduct, or even a restatement of previously-issued financial statements.

Plaintiffs also face the risk that they will not be able to prove some or all of their damages, even if liability is established. There are two significant difficulties in regard to proving damages: (1) Defendants would argue that the decline in Xerium's stock price may have been influenced by factors other than the Defendants' alleged misstatements; and (2) Defendants would also argue that their alleged conduct may not have been the only factor influencing Xerium's stock price during the Settlement Class Period. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 182-83 (E.D. Pa. 2000).

The determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert opinions. The reaction of a jury to complex expert testimony is highly unpredictable. The jury may reject assumptions underlying the expert testimony regarding damages as speculative or unreliable. Conceivably, a jury could find that there are no damages or that damages are only a fraction of the amount that Plaintiffs contend. *Ikon*, 194 F.R.D. at 182-83.

The Settlement provides an immediate benefit to the Settlement Class Members that, when balanced against the potential costs and risks associated with continued litigation of this case, supports a finding that the Settlement is fair, reasonable and adequate. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass. 2005) (Court approved the settlement of a class action, stating that the "'settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.'") (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 394 (D.D.C. 2002)). *See also Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 508 (E.D. Pa. 2000) ("Consideration of the risks faced by plaintiffs in establishing liability and damages weighs in

- 8 -

favor of settlement, which eliminates all such risks."). Specifically, the Settlement Class will receive $3,600,000, less fees and expenses. This is a significant benefit.

**B.    Consideration of the Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

"Securities cases are always complicated, and the extensive and time consuming discovery of this case indicate that this action is no exception." *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 429 (E.D. Pa. 2001). If not for this Settlement, the Settling Parties would continue to vigorously litigate this Action. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary, and are represented by well-respected and capable counsel. Indeed, this Action went on for over two years before a settlement was reached, and it could easily continue for years pending trial and appeals.

Although much progress had been made in litigating this Action, there was much work left to be done. Additional documents would have needed to be produced, witness and expert depositions would have to be taken, summary judgment motions would have to be briefed and argued, *Daubert* motions would need to be litigated, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted and motions *in limine* would have to be filed and argued. Further, massive amounts of time would be expended by the parties in preparing this case for a lengthy and complicated trial. A trial in this complex case would be no simple task.

Moreover, whatever the outcome of trial, appeals could be taken to the Court of Appeals for the First Circuit. All of the foregoing factors would extend the case and delay the ability of the Settlement Class to recover for years, assuming, at the end of that road, there was anything left to recover. In *Krangel*, the court observed that:

> The costs of trying this matter would substantially burden any recovery obtained for the class, particularly in light of defendants' economic difficulties. Thus, if this case were to be litigated to its conclusion rather than settled, resolution would be

complex, time consuming, and expensive. Consideration of this factor weighs in favor of settlement.

194 F.R.D. at 507. Settlement at this point in the litigation results in significant and tangible present recovery, without the necessary risk, expense, and delay of trial and post-trial litigation.

### C. Consideration of the Stage of the Proceedings Supports Approval of the Settlement

Plaintiffs' Counsel prepared extensive briefs and other papers relating to the Action. In addition to drafting an initial complaint and a factually detailed amended complaint, Plaintiffs briefed an opposition to Defendants' motion to dismiss the complaint, and vigorously pursued document discovery from Defendants. "Counsel have invested sufficient time and attention to the merits of the case to have a reasoned opinion of its settlement value as well as whether settlement is even the prudent course of action." *Ikon*, 194 F.R.D. at 180.

During the PSLRA-mandated discovery stay, prior to the ruling on Defendants' motion to dismiss, Plaintiffs' Counsel conducted a thorough review of Xerium's SEC filings, press releases, and other public statements, as well as a review of analysts' reports and other publicly-available information relating to the Company. Plaintiffs' Counsel also identified, located and interviewed a number of confidential witnesses, including former Xerium employees and customers. After the ruling on Defendants' motion to dismiss, Plaintiffs vigorously pursued discovery from Defendants and third parties, and received over 7,000 pages of documents, which were reviewed and analyzed. Finally, Plaintiffs consulted with a damages expert to analyze loss causation issues, and a private investigative firm to assist in reviewing, analyzing and developing all the critical facts necessary to state viable claims under the federal securities laws related to Xerium's alleged misconduct in connection with its initial public offering.

D.     **In the Judgment of Experienced Trial Counsel the Settlement Is a Favorable Result**

Experienced and highly capable counsel for Plaintiffs, after extensive arm's-length negotiations, have weighed all of the relevant factors and concluded that the Settlement is a favorable result that is in the best interests of the Settlement Class. Given all the issues, the Settlement reached is a testament to the skill and creativity of Plaintiffs' Counsel. Their view, although not conclusive, is entitled to significant weight. *See Gen. Instrument*, 209 F. Supp. 2d at 429.

In light of all of the factors discussed above, this Settlement is clearly in the best interests of Settlement Class Members:

> Considering the present value of the money, the probability of lengthy litigation in the absence of a settlement, the high risks that the plaintiffs would not have been able to succeed on liability, at least not for the entire period, and the likelihood the damages received would have been much lower than those demanded by plaintiffs, the settlement is a reasonable percentage of the total likely recovery at trial. Additional factors lending support to this conclusion are the non-monetizable value of the settlement's provision for cooperation between [the defendant] and the plaintiffs against the non-settling defendant. . . .

*Ikon*, 194 F.R.D. at 184. Those same considerations apply here.

E.     **The Settlement Is the Result of Arm's-Length Negotiations**

This Settlement was reached after intensive, arm's-length negotiations, under the auspices of a former federal district judge. At the mediation, each side presented its best evidence and the perceived strength of their respective case, and the estimated amount of damages suffered by the Settlement Class. The opposing views were also presented. Under these circumstances, there is no suggestion of any collusion or illegality. "[T]he hallmarks of a questionable settlement are not present: plaintiffs receive a significant monetary settlement as well as the non-tangible benefit of cooperation, and there is no suggestion of collusion between the defendants and plaintiffs' counsel." *Ikon*, 194 F.R.D. at 184.

- 11 -

Plaintiffs believe that the Settlement is a very good result under the circumstances. Plaintiffs have clearly demonstrated that the settlement negotiations in this case were extensive and undertaken at arm's length by counsel on both sides, who each have substantial experience and expertise in representing parties in securities class actions. Throughout the settlement negotiations, the parties employed their own teams of attorneys, consultants, and experts to assess the validity of Plaintiffs' allegations and Defendants' defenses.

The negotiation produced a settlement agreement that is fair to all Settlement Class Members and does not unjustly benefit any Settlement Class Member. The Plan of Allocation was developed by Plaintiffs' Counsel, with the assistance of a highly qualified consultant, to provide that the Settlement Fund will be distributed on a *pro rata* basis, based on a formula that takes liability and potential damages into account for the various periods of time.

Because the Settlement resulted from arm's-length negotiations and the final agreement suggests no bias, collusion or coercion in favor of any party or sub-group of class members, this factor weights in favor of settlement approval. "The proponents of a class settlement can obtain 'a strong initial presumption that the compromise is fair and reasonable' by establishing that the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." *Rolland*, 191 F.R.D. at 6 (quoting *Galdi Sec. Corp. v. Propp*, 87 F.R.D. 6, 9 (S.D.N.Y. 1979)).

## F.    The Reaction of the Settlement Class Supports the Settlement

Notices of the Settlement were sent to 11,125 potential Settlement Class Members, and the Summary Notice was published in *Investor's Business Daily* on December 12, 2008. Sylvester Decl., ¶¶8, 11. The time period for objecting to the Settlement expires on February 11, 2009. As noted above, to date there are no objections, and only two requests for exclusion from the Settlement

Class, representing 1,000 shares.  It should be noted that Xerium offered 15 million shares in the initial public offering.

"That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citation omitted).

> To date, and despite having been afforded a full opportunity to do so, no class member has objected to the terms of the Settlement.  Courts have deemed the attitude of class members toward the settlement of a class action, as evidenced by the absence of objections, as constituting an indication that the settlement is fair and reasonable. The absence of any objections argues in favor of approval of the settlement.

*Krangel*, 194 F.R.D. at 507 (quotations and citation omitted).  *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (court approved class action settlement after no objections and three opt-outs).

### G.    The Settlement Is in the Public Interest

This litigation has been occupying judicial resources for over two and one-half years, and there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) ("[t]he public interest in amicable resolution of cases is particularly strong" in class action litigation); *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 190 (2d Cir. 1990) ("Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence."); *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources and reduce parties' costs.).

Settlement approval will free up judicial resources and provide a tangible recovery to the Settlement Class Members, who have been awaiting the outcome of this litigation for quite some time. Moreover, the Settlement allows Xerium and its officers and directors to resume business unencumbered by this time-consuming and complex litigation. Given the Company's deteriorating financial condition (*see* Rothman Decl., ¶58), this is an important consideration. For all of the reasons discussed here and above, the Settlement clearly is in the public interest.

## III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Plaintiffs also seek approval of the Plan of Allocation of the Settlement proceeds. Evaluation of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.) ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the Plan of Allocation was developed by Plaintiffs' Counsel together with their damage consultant. The Plan of Allocation reflects an assessment of the market losses of the Settlement Class and an assessment of the individual Settlement Class Member's market losses, based on whether they held their Xerium stock or sold it prior to the filing of the initial complaint. The Plan of Allocation will result in a fair distribution of the available proceeds among those Settlement Class Members who submit a valid claim. *See In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001); *Ikon*, 194 F.R.D. at 184.

- 14 -

Detailed explanations of the loss calculations are provided in the Notice. Therefore, the Notice clearly sets forth the Plan of Allocation for Settlement Class Members, with a clear explanation of the rationale used to calculate each Settlement Class Member's portion of the Settlement Fund.

> In sum, the plan of allocation, as a general matter, fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. As such, the plan fairly and rationally allocates the settlement consideration among class members and accordingly should be approved as fair and reasonable.

*Microstrategy*, 148 F. Supp. 2d at 669 (citation omitted). *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (approving plan of allocation providing that class members submitting proof of claim forms evidencing a loss in securities transactions were entitled to recovery).

## IV. FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order certified the Settlement Class, for purposes of effectuating the Settlement only, as "all Persons who purchased Xerium common stock pursuant to and/or traceable to the Company's initial public offering on or about May 16, 2005 through November 15, 2005." Final certification of the Settlement Class should now be entered for purposes of settlement.

If all of Rule 23's requirements are met, a class may be certified for purposes of a settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *Relafen*, 231 F.R.D. at 68. "[A] district court must first find that a class satisfies the requirements of Rule 23, regardless of whether it is certifying the class for trial or for settlement." *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 418 (S.D. Tex. 1999); *see also Amchem*, 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the

settlement class context."). However, "the district court may take the proposed settlement into consideration when examining the question of certification. *Amchem*, [521 U.S. 620-21]. . . . [Additionally], 'a district court [determining whether to certify a class for settlement purposes only] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'" *Lease Oil*, 186 F.R.D. at 418 (quoting *Amchem*, 521 U.S. at 620). Moreover, "the law favors class action settlements." *Lupron(R)*, 228 F.R.D. at 88.

In order to be certified, a class must satisfy the four requirements of Rule 23(a), and fit within one of the categories of class actions set forth in Rule 23(b). *Tardiff v. Knox County*, 365 F.3d 1, 4 (1st Cir. 2004). The Settlement Class here easily satisfies all of Rule 23's requirements and should be certified.

### A.    The Settlement Class Is Sufficiently Numerous

For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no fixed number of class members which either compels or precludes the certification; indeed, classes consisting of 40 members generally are sufficient to establish numerosity. *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004). Here, 15 million shares of Xerium common stock were sold in the initial public offering, and as the Sylvester Declaration sets forth, 11,125 individual Notices were sent to Settlement Class Members throughout the country. Therefore, the threshold for a presumption of impracticability of joinder is thus easily exceeded.

### B.    Common Questions of Law or Fact Exist

The commonality requirement of Rule 23(a)(2) is satisfied when common questions of law or fact are present. *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003). It is not necessary that all issues of fact and law be common. *Relafen*, 231 F.R.D. at 69. Here, the complaint spells out a "common course of conduct," the hallmark of securities class actions. *See,*

*e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). The scheme alleged here is similar to that found in *Blackie*, where the Ninth Circuit held:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Id.* at 902. Thus, class certification is proper when, as here, a class of stock purchasers is damaged over a period of time by similar misrepresentations due to defendants' common course of conduct. *See id.* at 904-05. In this case, Plaintiffs alleged that material misrepresentations and omissions were contained in (or omitted from) Xerium's Registration Statement and Prospectus, thereby similarly deceiving each purchaser of Xerium common stock pursuant to and/or traceable to the initial public offering. Rule 23(a)(2) is therefore satisfied.

### C. Plaintiffs' Claims Are Typical of Those of the Settlement Class

Plaintiffs' claims are typical of Settlement Class Members' claims. Under Rule 23(a)(3), claims are typical where the "'named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'" *Rodrigues v. Members Mortgage Co.*, 226 F.R.D. 147, 151 (D. Mass. 2005) (citation omitted). Typicality requires "the same essential characteristics" among claims. *Payne*, 216 F.R.D. at 26. "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Relafen*, 231 F.R.D. at 69 (citation omitted).

In this case, the typicality requirement is met. There is no conflict or antagonism here between the Plaintiffs' interests and those of the members of the Settlement Class because the claims of all Settlement Class Members derive from the same legal theories and allege the same set of

operative facts.  Like all of the Settlement Class Members, Plaintiffs purchased their Xerium common stock pursuant to and/or traceable to a Registration Statement and Prospectus that contained materially false and misleading statements or omissions, without knowledge of material facts Defendants concealed or misstated.  Therefore, all Settlement Class Members were victims of the same course of alleged conduct.

### D.    Plaintiffs are Adequate Class Representatives

Under Rule 23(a)(4), plaintiffs must also "fairly and adequately protect the interests of the class."  Adequacy "'requires that Plaintiff demonstrate that [his] interests will not conflict with those of class members and that [his] counsel is qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Rodrigues*, 226 F.R.D. at 151 (citation omitted).  Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy.  No such conflict exists here.  Moreover, "'[i]n complex actions such as this one, named plaintiffs are not required to have expert knowledge of all details in the case, . . . and a great deal of reliance on the expertise of counsel is to be expected.'"  *Relafen*, 231 F.R.D. at 69 (citation omitted).

The adequacy test is met here.  The Plaintiffs' interests are co-extensive, do not conflict with the Settlement Class Members' interests, and are typical of the claims of the Settlement Class.  Substantial common questions of fact and law exist and the Plaintiffs' interests are aligned with those of the Settlement Class.  The Plaintiffs have retained experienced counsel to prosecute this case, and have participated in all aspects of the litigation.  Plaintiffs' Counsel possess extensive experience in the area of securities litigation and have successfully prosecuted scores of securities fraud class actions across the country.  *See* declarations of Plaintiffs' Counsel, submitted herewith.

### E.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is

superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. This case easily meets Rule 23(b)(3)'s requirements.

### 1. Common Questions of Law and Fact Predominate Over Individual Questions

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above, there are a host of common questions of law and fact as to the members of the Settlement Class which Plaintiffs seek to represent. These questions clearly predominate over individual questions because Defendants' alleged conduct affected all Settlement Class Members in the same manner – by artificially inflating the price of Xerium stock. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. The First Circuit does not require an "entire universe" of common issues, but does require a "'sufficient constellation'" of them. *Relafen*, 231 F.R.D. at 70 (citation omitted). As described above, this requirement is clearly met.

### 2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. The requirement of superiority "ensures that resolution by class action will 'achieve economics of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Relafen*, 291 F.R.D. at 70 (citing *Amchem*, 521 U.S. at 615). As further explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for proposal is that there be no trial." 521 U.S. at 620. Any management problems that may have existed here are eliminated by the Settlement. Therefore, because each of the other elements of Rule 23 are satisfied,

a class action is the superior method of adjudicating the relatively small claims of Settlement Class Members.

## V.    CONCLUSION

This Settlement is an excellent result, given the presence of skilled counsel for the Settling Parties, the very real risks of little or no recovery at all if the litigation continues, and the present benefit of the Settlement to all Settlement Class Members.  Moreover, the Plan of Allocation of the Settlement proceeds adequately compensates Settlement Class Members based on their losses. Finally, the Settlement Class meets all of the requirements of Rules 23(a) and 23(b)(3).  Therefore, Plaintiffs respectfully request that the Court grant final approval of the Settlement, approve Plaintiffs' proposed Plan of Allocation and certify the Settlement Class.

DATED:  February 4, 2009                    Respectfully submitted,

                                            SHAPIRO HABER & URMY LLP
                                            THOMAS G. SHAPIRO (BBO #454680)
                                            ADAM M. STEWART (BBO #661090)


                                            _____s/ Adam M. Stewart_____
                                                    ADAM M. STEWART

                                            53 State Street
                                            Boston, MA  02109
                                            Telephone:  617/439-3939
                                            617/439-0134 (fax)

                                            Liaison Counsel

                                            COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD
                                            MARIO ALBA, JR.
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Adam M. Stewart, hereby certify that on February 4, 2009, this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

**/s/ Adam M. Stewart**
Adam M. Stewart